# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIM. NO.: 10-cr-0009** |
| v. | ) | |
| | ) | |
| STEPHEN GARVEY, a/k/a "BIGGA" | ) | |
| MALIK GARVEY, | ) | |
| ORLANDO CARINO, | ) | |
| DAREN HENRY, | ) | |
| CHRISTOPHER JACOBS a/k/a "KIMO," | ) | |
| DAVID ROLDAN a/k/a "BEBO," | ) | |
| ALPHONSO GARVEY, and | ) | |
| EDWARDO GOMEZ | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Finch, Senior Judge

THIS MATTER is before the Court on Defendant Orlando Carino's ("Carino") Motion to Suppress evidence obtained during a vehicle stop of a car he was driving on January 31, 2009. After observing Carino visit a Mailboxes N' More store and load a large package that law enforcement suspected of containing marijuana into his car, police pulled over Defendant and asked him if they could search the package. He consented and inside the package police found twenty-five pounds of marijuana. Carino moves to suppress the marijuana and statements that he made to the police following its discovery on the grounds that the Government lacked probable cause or reasonable suspicion to conduct the stop. The Government opposes the motion, arguing that it had reasonable suspicion to stop and question Carino.

## I. BACKGROUND

The following facts are based on the affidavits of Special Agent James Semrick of the Drug Enforcement Administration ("DEA"), dated March 16, 2009, and October 26, 2009, as well as Semrick's testimony at the suppression hearing held on September 16, 2010.

On January 30, 2009, FBI Special Agent Tom Drummond met with Agent Semrick to relay information he had received from a concerned citizen. The concerned citizen, who has not been identified, stated that a FedEx package sent from El Paso, Texas to Luis Castillo at Estate Diamond Ruby, Suite 7 in Christiansted, Virgin Islands, contained marijuana and provided a tracking number. The tracking number was checked with the FedEx website but no corresponding package could be located. However, the tracking number was found in the United States Postal Service (USPS) track and confirm database. The package was listed as being accepted in El Paso, Texas at 9:37 a.m. on January 29, 2009 and received at the Carolina, Puerto Rico facility at 12:31 p.m. on January 30, 2009. With the aid of USPS Inspector Steve Stebbins, Semrick determined that the package in question weighed thirty-four pounds and cost $134.40 to ship. The sender listed his information as Juan Castillo at 200 N. Mesa Hills, El Paso, TX 79912. Stebbins identified the delivery address for the package as Mailboxes N' More ("Mailboxes"), at 4093 Estate Diamond Ruby, Suite 7, Christiansted, Virgin Islands 00822.

On January 31, 2009, Semrick verified the location of the package through the USPS website. The website listed the package as processed at the Kingshill, Virgin Islands mail facility at 4:07 a.m. Semrick was informed by postal employees that packages were usually delivered to Mailboxes around noon. Task Force Officer (TFO) Luis Ortiz and TFO Sidney Elskoe began surveillance of Mailboxes at 9:00 a.m. The officers observed Daren Henry,

whom they recognized as the owner and manager of Mailboxes making several trips to and from Mailboxes and meeting with Stephen Garvey, whom they also recognized, for approximately fifteen minutes at Mailboxes. Semrick knew from Stebbins that Henry was under investigation for shipping a kilogram of cocaine to Pennsylvania from Mailboxes.

At approximately 12:15 p.m., a USPS delivery van arrived at Mailboxes and a postal worker unloaded "several large size boxes" which were consistent with a thirty-four pound oversized box.[1] At approximately 12:40 p.m., two individuals were observed by Special Agent Fritz and TFO Elskoe loading large boxes into the bed of a white Ford F-150 pick-up. Ortiz observed the passenger opening one of the boxes as the pick-up truck was heading toward Sunny Isles Shopping Center. Ortiz conducted a traffic stop on the vehicle and spoke to the occupants, but after determining that the boxes in the truck were not the target of the surveillance, terminated the vehicle stop. At approximately 12:50 p.m., Fritz and Elskoe observed a female enter and exit Mailboxes within a brief span of time. The female got into a vehicle and drove to another location in the Sunny Isles parking lot. Fritz and Elskoe approached the driver, who identified herself and stated that she had stopped by Mailboxes to visit a relative. Following the interview, the driver left the area.

At approximately 1:00 p.m., Fritz and Elskoe observed an individual, later identified as Orlando Carino, exit a 2007 gold Honda CRV, enter Mailboxes and exit carrying a large box, which he placed in the back seat of the Honda. Carino departed and drove westward on Queen Mary Highway. Shortly after 1 p.m., Ortiz and Semrick conducted a traffic stop on the Honda and questioned Carino about the package. When questioned about the package, Carino stated that he had picked up the package for Steve Garvey, and during Carino's response, his cell phone

---

[1] At the suppression hearing, Semrick did not know exactly how many boxes were delivered.

3

rang. Carino stated that the incoming call was from Garvey and showed the investigators the phone displaying the name "Steve Garvey." Carino also consented to a search of the package. Semrick examined the package and confirmed that it was addressed to Luis Castillo at 4093 Estate Diamond Ruby, Suite 7, Christiansted, VI 00822. The tracking number provided by the anonymous tipster was also found on the package. The box was found to contain two five gallon buckets wrapped in an El Paso newspaper and plastic wrap. Inside the two buckets was a total of twenty-five pounds of marijuana. A search of the vehicle was then also undertaken, revealing a loaded Mossberg 12 gauge shotgun and ammunition. Carino was placed under arrest and indicated a willingness to cooperate with law enforcement. He gave oral consent to search the package, his vehicle and the four cellular phones in his possession. Further inspection of Carino's vehicle revealed a white five gallon bucket and a white jar with marijuana residue. Carino was arrested following the discovery of the marijuana and shotgun.

Carino seeks to suppress all evidence obtained from him pursuant to the traffic stop of his vehicle as well as statements he made to police following his arrest.

## II. Discussion

### a. Appropriate Standard - Probable Cause or Reasonable Suspicion?

The Government does not challenge that the traffic stop of Carino was a seizure within the meaning of the Fourth Amendment. *See United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010) ("A traffic stop of a motor vehicle is a seizure of the vehicle's occupants for the purposes of the Fourth Amendment.") (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). However, the Governent contends that police only needed reasonable suspicion to perform the

traffic stop. Defendant, on the other hand, argues that probable cause was required. The Court concurs with the Government.

The Fourth Amendment protects citizens from "unreasonable searches and seizures . . ." U.S. Const. amend. IV. In general, "for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). However, pursuant to *Terry v. Ohio,* "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." 392 U.S. 1, 30-31 (1968). *Terry*'s holding is also applicable to vehicles and police may stop a car when they have "articulable and reasonable suspicion that . . . either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Prouse*, 440 U.S. at 663; *Robertson*, 305 F.3d at 167 (finding that police officer had reasonable suspicion to stop bus to determine if robbery suspects were on bus); *United States v. Toro-Pelaez*, 107 F.3d 819, 823-24 (10th Cir. 1997) ("A traffic stop is a seizure within the meaning of the Fourth Amendment[, but] it is characterized as an investigative detention, which requires reasonable suspicion of criminal activity before a seizure can be made, rather than a full custodial arrest, which requires probable cause."). Defendant argues that the *Terry* stop of Carino was converted into an arrest requiring probable cause because officers used sirens or activated the lights on their vehicle. The Court disagrees. *See, e.g., Johnson*, 592 F.3d at 448 ("[T]he vast majority of courts have held that police actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest *per se*"). Accordingly, the question posed by this motion is whether police had reasonable suspicion to perform a traffic stop on Carino.

### b. Did Law Enforcement Have Reasonable Suspicion to Stop Defendant?

"When assessing whether the vehicle stop was supported by reasonable suspicion, [the court] must consider the totality of the circumstances to determine whether the detaining officers ... [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Johnson*, 592 F.3d at 448 (citations omitted); *Robertson*, 305 F.3d at 167 ("To determine whether reasonable suspicion exists [the court] must consider the totality of the circumstances-the whole picture.") (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002) (court must consider totality of circumstances "[t]o see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing"). "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 271, (2000). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). "[T]he determination of reasonable suspicion must be made on common sense judgments and inferences about human behavior." *Robertson*, 305 F.3d at 167.

Here, the Government contends that Semrick and Ortiz had reasonable suspicion to pull over Defendant based on their observation that he had picked up a package fitting the description of a package that they reasonably believed contained marijuana and because they knew that Mailboxes had been involved in prior illegal drug shipments. Defendant argues that these this knowledge was too tenuous to support reasonable suspicion that he had picked up a package

containing marijuana and specifically challenges whether the anonymous tip was sufficient to supply reasonable suspicion to police.

The Court finds that police had at least reasonable suspicion (and probably probable cause) to believe that a package containing marijuana had arrived at Mailboxes on January 31, 2009. "[A]n anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Florida v. J.L.*, 529 U.S. 266, 270 (2000). The Court "uses a flexible standard that assesses the relative value and reliability of an informant's tip in light of the totality of the circumstances." *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000). Indicia of reliability include (but are not limited to) whether the tip contains "information that would be available to any observer . . . [t]he person providing the information has recently witnessed the alleged criminal activity . . . [t]he tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility." *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008). In this case, there are sufficient indicia of reliability. First, the tip provided information that would not normally be available to any observer, including the tracking number of the package, the place of origin, and the shipping address of the package. Second, the tipster displayed knowledge of the contents of the package as well as familiarity with the outside of the package. It is a fair inference from these facts that the tipster had witnessed or had been involved in the preparing of this package. While the record is not precise on the exact day that the tipster called Agent Drummond, the latest it could have been was January 30, 2009, the same day that Drummond relayed the tip to Semrick. The tipster provided an actual tracking number which indicates that the tipster called in the tip after the package was sent. After receiving the tip, Semrick was able to determine that the package was sent on January 29, 2009. Thus, Semrick knew that the tip was likely relaying fresh information.

7

*See Valentine*, 232 F.3d at 354 (finding that recentness of information contained in informant's tip weighed in favor of its reliability). Third, the tipster correctly predicted that the package would arrive at Estate Diamond Ruby, Suite 7 in Christiansted which is the physical address of Mailboxes.

Furthermore, "[t]he reliability of an informant's tip can be enhanced further by independent police corroboration of the information provided." *Johnson,* 592 F.3d at 450 (citing *Alabama v. White*, 496 U.S. 325 329-31 (1990)). Here, police were able to corroborate that a package with the same shipping number was shipped from the same location and to the same address as described by the tipster. The only details not immediately corroborated were the shipper and the package's contents. At the suppression hearing, Defendant stressed that the inaccuracy regarding the shipping company – FedEx versus USPS – vitiated any reliability that the tip may have had. However, the Supreme Court has explained that partial corroboration of a tip helps to establish an informant's veracity because if "an informant is right about some things, he is more probably right about other facts." *Illinois v. Gates*, 462 U.S. 213, 244 (1983). Whether the package had been shipped via FedEx or the United States Postal Service was the least material and most benign detail provided by the tip. That the tipster was wrong about this fact does little in undermining the veracity of the rest of the tip, which was substantially corroborated.

The reasonableness of the Government's belief that a package containing marijuana was delivered to Mailboxes on January 31, 2009 was enhanced by its awareness of the package's precise whereabouts as it moved through the shipping system. Semrick determined that the package identified by the tipster had arrived in St. Croix at approximately 4 a.m. on January 31, 2009. Local USPS employees indicated to Semrick that packages received that morning would

8

likely be delivered to Mailboxes at around noon that day. At 12:15 p.m. a postal worker was seen unloading "several large size boxes" consistent with the size of a box consistent with a thirty-four pound box. Thus, when those "several large size boxes" arrived, based on the tip, the tracking of the package by agent Semrick and his knowledge that Mailboxes was used as a shipping center for illegal drugs, the Court concludes that he had at least reasonable suspicion to believe that one of those large packages contained marijuana.

The Court also finds that police had reasonable suspicion to believe that Carino had picked up the package containing marijuana. Several reasons weigh in favor of this finding. First, police were reasonable in believing that the individual picking up the package containing marijuana was likely to pick up the package on the day that it was delivered, January 31, 2009. As agent Semrick was able to track the package online, it was reasonable for him to believe that its recipient was doing the same. And it is not far fetched for law enforcement to think that someone receiving a package containing drugs would be eager to pick it up so as to avoid having it remain in Mailboxes' custody. *See, e.g., Doran By and Through Doran v. Condon,* 5 F.Supp.2d 1067, 1069 (D.Neb. 1998) (noting that the recipient of a shipment of methamphetamines picked up shipment from post office on same day that it arrived).

Second, the Court finds that the temporal proximity between when the suspicious package was delivered, 12:15 p.m., and the time that Carino picked up the package, 1:00 p.m., provides additional grounds for the reasonableness of the Government's suspicion. *See United States v. Goodrich*, 450 F.3d 552, 562 (3d Cir. 2006) (finding that police had reasonable suspicion to perform traffic stop on defendant because "it is clear to us that the geographical and temporal proximity of Kinne's vehicle (and therefore Goodrich himself) to the scene of the

reported theft in progress is another important factor militating strongly in favor of the validity of the stop.").

Third, Carino was observed entering Mailboxes and leaving with a package that was consistent with one of the "several large sized boxes" that had arrived only an hour before. While police did not know if the specific package picked up by Defendant was the one that they suspected of containing marijuana, they knew that there was a fair probability that it was and thus had reasonable suspicion to believe that it was the one shipped from El Paso. Only "several" packages were delivered that day that fit the description of a box weighing thirty-four pounds.[2] Earlier that day, police had observed two other individuals enter Mailboxes and load large boxes into their truck.[3] Those boxes were confirmed as not containing marijuana. Thus, by the time Carino picked up the package in question, police had limited the number of large boxes that potentially contained the marijuana, increasing the chances that the large box picked up by Carino was the one containing marijuana. The Court recognizes that under different circumstances – for example, if the package in question were a small envelope, dozens or hundreds of which might be delivered to Mailboxes on any given day – that police would not have reasonable suspicion to pull over any customer who leaves with an envelope. But here, only several, not many, large boxes were delivered that day and Carino was seen loading a large box into the car only minutes after they had arrived at Mailboxes. While perhaps a closer case than the Government would like to admit, the Court finds that Semrick and Ortiz had reasonable suspicion to *Terry* stop defendant's car.

---

[2] The term "several" is generally understood to mean more than two but fewer than many. *See* Webster's New Collegiate Dictionary 1062 (1976); Black's Law Dictionary 1232 (5th Ed. 1979).
[3] The Court does not opine on whether police had reasonable suspicion to perform traffic stops on the other two vehicles stopped prior to Carino.

Defendant argues that the Supreme Court's holding in *Henry v. United States*, 361 U.S. 98 (1959) compels a different result. In *Henry*, the FBI had learned of a theft of an interstate shipment of whiskey. *Id*. at 99. The next day, FBI agents observed the defendant and another individual in a car, enter an alley and stop. FBI agents watched defendant get out of the car, enter a residence, return with some cartons and place them in the car. The agents observed the defendant drive away, return a few minutes later, and retrieve more cartons from the same residence. After the defendant drove away, the agents stopped the car, seized the cartons and determined that they contained stolen radios. *Id*. at 99-100. The defendant moved to suppress the evidence. The Supreme Court determined that the FBI lacked probable cause to stop and search the car finding that:

> Riding in the car, stopping in an alley, picking up packages, driving away-these were all acts that were outwardly innocent. Their movements in the car had no mark of fleeing men or men acting furtively. The case might be different if the packages had been taken from a terminal or from an interstate trucking platform. But they were not. As we have said, the alley where the packages were picked up was in a residential section. The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. The police must have reasonable grounds to believe that the particular package carried by the citizen is contraband. Its shape and design might at times be adequate. The weight of it and the manner in which it is carried might at times be enough. But there was nothing to indicate that the cartons here in issue probably contained liquor.

*Id*. at 103-104.

There are several key distinctions between *Henry* and this case. First, here, the issue is whether law enforcement had reasonable suspicion to stop Carino, not probable cause. *See Prouse*, 440 U.S. at 663 (reasonable suspicion sufficient to justify investigative stop of automobile). Second, unlike the residence in *Henry*, defendant picked up the package from a place known to be involved in drug shipping. More importantly, defendant picked up the

11

package in question less than an hour after a package suspected of containing marijuana had arrived at Mailboxes. While it is true that many people might pick up packages at any given day at Mailboxes, the record does not reflect that many people picked up *large* packages on the day in question. Finally, as discussed above, police had reasonable suspicion to think that the package picked up by defendant contained marijuana based on the fact that it generally matched the description fitting the tracking number given by the tipster and was one of a relatively few number of similarly large packages.

**III.    Conclusion**

For the foregoing reasons, the Court concludes that under the totality of the circumstances, law enforcement had reasonable suspicion to perform a traffic stop on Defendant Carino. As there is no debate over whether Defendant gave the Government consent to search the package in question, the Court **DENIES** Defendant's Motion to Suppress.

**ENTERED**:

Dated: September 17, 2010

_____/s/_____
RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE